Here on this case number 2-18-0298, Bethany Floyd Frisby, plaintiff at lease, v. Village of Bolingbrook Firefighters' Pension Fund, pass out. Arguing on behalf of Mr. Dennis Pence, 413 Firefighters' Pension Fund, Mr. Jeffrey A. Goodlove. Arguing on behalf of the plaintiff, Village of Bolingbrook, Mr. Marshall Neal Smith, Jr. Arguing on behalf of the plaintiff, Lee, Mr. Thomas W. Stewart. Counsel for the appellants, it's my understanding you have a stipulation. One of you is going to take the opening statement and the other, Mr. Smith, you are going to take the rebuttal. Is that correct? Correct. Okay. Mr. Goodlove, on behalf of the appellant, you may proceed. Good morning, your honors, and may it please the court. My name is Jeffrey Goodlove. I represent the Bolingbrook Firefighters' Pension Board, and again, I'd like to reserve five minutes for rebuttal, and Mr. Smith for the Village of Bolingbrook will be handling the rebuttal on this matter. Yes, that request will be granted. Thank you very much. Thank you. There are three issues I'd like to address today. The first issue is whether the pension board's decision denying the application for a line-of-duty disability pension was clearly erroneous. And number two, whether the trial court erred when it looked to the Workers' Compensation Act in interpreting the pension code in the active duty statute. And then number three, if I have time, I'd like to just touch on some of the problems I foresee if the trial court's order is allowed to stand. So section 4-110 of the pension code is the line-of-duty disability statute for firefighters, and essentially it provides that if a firefighter suffers a disabling injury that resulted from or was incurred in the performance of an active duty or the cumulative effects of active duty, that firefighter is entitled to a line-of-duty disability pension. Section 4-110 or Article 4 in general does not define the phrase active duty. This court, in a case called Jensen v. East Dundee Fire Protection District Firefighters Pension Board, said the pension board should look to Article 6, that is Section 6-110 of the pension code, for the definition of active duty. So the definition of an active duty is specifically defined by the legislature in the pension code. An active duty is an act imposed on the firefighter by ordinance of the municipality or by rule or regulation of its fire department or an act while on duty having for its direct purpose the saving of the life or the property of another. And that perhaps may be where there's a strong difference of opinion. I think clearly her shift had not actually started, correct? That's correct. But she's making the argument that she was required to perform the duty of being timely, being prepared, being there, which is a requirement specifically prescribed pursuant to the collective bargaining agreement. So how does that square with your argument? Well, in looking at the collective bargaining agreement, the collective bargaining agreement only says this, quote, the hours of duty shall be 24 consecutive hours on duty and the workday shall begin at 7 a.m. and end following a.m., end quote. That's what it says. So the collective bargaining agreement sets forth the time that the shift starts and the time that it ends. The collective bargaining agreement doesn't discuss any acts, specifically any acts imposed on the firefighter. How did she get there at 7 a.m. then? Well, she had choices as to how she could get there at 7 a.m. So is it your position that there can never be an active duty prior to 7 a.m.? I've thought long and hard about that question. I think that, in my opinion, the only way that there can be an off-duty act that would constitute an active duty is if it were an act while, this is going to sound strange, an act while on duty having for its direct purpose the saving of the life and property of another. Because on duty. The firehouse is on fire and she's in the parking lot and then she's on duty? Well, no, that's not correct because it's not just being on duty. So on duty is defined as an act while on any assignment approved by the chief of the fire department even though away from the municipality he or she serves as a firefighter if the assignment is related to fire protection service in the municipality. So in theory, I think that somebody could be off their normal shift. They could be on an assignment approved by the fire chief and away from the municipality and off-duty, but then they would still have to be performing something having for its direct purpose the saving of the life and property of another to constitute an active duty. So to answer your question, Justice Jorgensen, I don't think that the legislature contemplated a situation where a firefighter could be off-duty and be performing an active duty such that they would be entitled to a line-of-duty disability pension. I rack my brain over it and I just don't see it. So you find no clear precedent on this case? I'm sorry? You find no clear precedent on this issue? Well, I find clear precedent in the Howell case that the House supports the pension board's decision here that the firefighter was off-duty at that time. The firefighter voluntarily chose to self-dispatch to something the firefighter believed to be an emergency and the first district in the Howell case said that that firefighter was not performing an active duty. That firefighter was not performing an act imposed by rule or regulation of its fire department at the time he decided to self-dispatch. When you say she self-dispatched, that isn't the case here. I think the evidence is even less persuasive in the case here. I think the firefighter, all the firefighter had to do was to be at the firehouse at 7 a.m. Plaintiff made choices as to how that occurred, not unlike how everybody makes choices as to how they get to work. All the requirement is is that they're punctual. Your owners have to be punctual, I have to be punctual, the clerks have to be punctual. The way we go about being punctual, that's not something that's controlled by a rule or regulation of the fire department by an ordinance of the municipality. So you're arguing for a very clear line of demarcation. A firefighter shows up, the shift hasn't started, they're not on any specific assignment, they fall in the parking lot, there's no coverage, there's no on-duty disability pension. That's your line of demarcation, right? I think it's a very clear line. I think it's one that also comports with legislative intent as well. And so I'd like to touch on a couple other issues. I think with respect to the active duty component, the plaintiff made arguments that there was an email from the superintendent of public safety and that that constituted a rule or regulation. You know, that email, which was issued a year and a half after the fall in the parking lot, simply set forth the superintendent's takeaways with respect to his observations of how the fire department was performing. It's not a rule or regulation. There were no orders there. He wrote, if you're not, my takeaway is that if you're not early, you're late. Well, that's just a function, really, of physics and the space-time continuum. Either you're early, you're right on time, or you're late. The report time was a rule, though. You had a time to report. There is a time to report. It's set forth in the collective bargaining agreement that says you must be ready at this time, right? But there's not a rule that addressed or a regulation that addressed how somebody was to comply with that, to be there on time. So the plaintiff in this case made a choice to keep her uniform at the firehouse. She made a choice to drive to work, to park in that parking lot, to arrive 20 minutes early. And those are choices that she made. There's no rule or regulation in this record which controls those actions. And the difference is this. If she's on duty, there are rules and regulations that control what the plaintiff is required to do. And there's one regulation in this record at Page. Let me see if I can find it here. Your Honors, bear with me just one moment. 2733 through 2735, there is one administrative regulation, and it's defined, regulation. And that actually sets forth qualifications, job requirements, skills and abilities, essential functions, and physical demands of a firefighter, the things that they have to do while they're on duty. So when the tones go off and the person's on duty, they have no choice but to respond. They have to go and do these things. They can't tell the chief, no, thanks on this one, I'm not going. Likewise, if the chief, while they're on duty, says, go mop the floor, I'm ordering you to do it, and they're mopping the floor and they fall, they're doing something imposed by rule or regulation to obey the chief. But you set the standard. You said they're on duty at that point. They're on duty. That means it's past 7 a.m. It is past 7 a.m. So there's a regulation that addresses that. If she had fallen after 7, would it qualify? Well, it depends on what she was doing. So if she's on duty and she's just walking back out to her car to get a cigarette, then no, she's not performing an act imposed by rule or regulation. So you're saying it must be 7 to 7, the appropriate 7 to 7, and an act saving the life or property of another. Well, I'm not saying that. It has to be 7 of 7. It has to be an act imposed by rule or regulation of the fire department or an act while on duty having for its direct purpose of saving the life or property of another. The 1st District in Ocalahan held that the phrase having for its direct purpose of saving the life or property of another only modifies that last clause being on duty. Okay? There's disagreement as to that. But the 1st District held that years and years ago, and so that's what my clients have to abide by. That's what the trial court has to abide by. So as long as they're performing an act imposed by rule or regulation of the fire department, they're covered. When you say by rule or regulation, your line of demarcation would obviously allow for no exceptions. What if the chief had ordered her to be there at 7 a.m. sharp? And it's 7.01, and she falls going into the building. Well, I still think she's not in the building yet. I still don't think that. So the chief orders her. She has to be there by 7 a.m. sharp because of the collective bargaining agreement. So if she walks into the building and she falls at 7.01 a.m., I still don't see how falling right after 7 o'clock is going to be an act of duty under the pension code because she's not doing anything imposed by rule or regulation of the fire department. She's just arriving for her shift. Now, if she's arriving for her shift and the tones go off and she's going to the ambulance and she slips and falls, that's a different story because she is required by rule or regulation to respond to those tones to go to that ambulance, and that's when she fell. But if she just walks from the firehouse and is going to go check her e-mails and falls down, that's not an act of duty under the pension code. So when does her shift begin, then, in your interpretation? If 7 o'clock and she enters the building and she gets struck, when does it start? It starts at 7 a.m. So anything that happens before that is not to be considered, in your opinion? I agree with that. I agree with that. I'm not saying that's my position. No, I fully understand that. And that's what brings me to the act. I mean, that's where the trial court erred when it applied the Workers' Compensation Act for purposes of trying to interpret the phrase act of duty. I mean, the first district in the House specifically held that with the issue we have here, which is whether somebody was performing an act of duty under the pension code, it is improper to look to the act for guidance as to what that means because there is a specific statutory definition for act of duty in the pension code. So courts can look to the act if there's an ambiguous provision in the pension code. So, for example, if the phrase act of duty wasn't defined anywhere, then the court could look to the act. But that's not what we have here. We have a specific statutory definition. And what the trial court did is that it ignored how, it ignored that, and it looked to the act and it said, well, under the act, employees can slip and fall in the parking lot 20 minutes before their shift starts or before work starts, and those people are covered under the act. But the reason they're covered under the act is because the court said, we interpret the phrase arising out of and in the course of employment under the act to allow for some reasonableness in time in terms of arriving to your shift or arriving to work. And the plaintiff cited to a couple cases, Chrisman, Hyman Walker Brothers. Those cases don't apply. The first district specifically held that they do not apply. The first district specifically held that pension cases that had relied on the act also don't apply, such as, like, Wilford, I think was one, Lucchese, and maybe. Where we have a specific definition, we have to look at that. Did the trial court make any findings that the pension code was ambiguous before it engaged in it going outside to the workers' compensation act? I think that what the trial court held, as I recall, Your Honor, is that there was ambiguity. There was a question about whether the personnel evaluation, there was an ambiguity as to whether the performance evaluation could constitute an act of duty. I think that's what the trial court went to, and then from there it bootstrapped on to say, now I can go look at the act and I can take this case like Chrisman, I can take Hyman Walker and say, if you fall in the parking lot before your shift starts, there has to be some reasonableness to get to work on time, and therefore it's an act of duty. And I'll say this. If the legislature wanted that to be the standard, that a firefighter gets a line-of-duty disability pension for falling in the parking lot 20 minutes before their shift starts, it would be very easy in light of Chrisman and Hyman Walker. Those cases have been around a long time, for the legislature to come back and say, we're going to amend section 4-110 to read as follows. A person is entitled to a line-of-duty disability pension if they suffer a disabling injury arising out of and in the course of employment, because that is the worker's compensation standard, and that would entitle the plaintiff to recovery. That's not what the legislature has done. They could easily do that. They have not done that. Was the trial court's statutory interpretation the reason why it conducted a de novo review of this? I think that it was. I think the trial court here conducted a de novo review. This court held in Jensen that this specific question calls for a mixed question of law and facts, subject to the clearly erroneous interpretation. But whether a rule in a collective bargaining agreement can satisfy a rule under the act, you know, under act of duty, would that be a de novo review, though? I thought about that as well. I don't think that it would. I think it's actually a question of fact for the pension board to make by saying, look, we have administrative rules and regulations, something that's identified as a regulation in the record at this page. Does this performance evaluation in any way reflect the things we have here in terms of a regulation? It doesn't say that. So I think it's more of a question of fact. I don't think it's for the court to come in and say the performance evaluation, a de novo review, it's a rule or regulation, and she was trying to perform accordingly. I think the court exceeded its authority there. But I don't know of any case specifically on point addressing that issue, Your Honor. What I do know is that there are two appellate court cases, the Jensen case and the Howell case, that say specifically with respect to this issue, whether a person was performing an act of duty, that constitutes a mixed question subject to the clearly erroneous standard of review, and the court has to be left with a definite and firm conviction that a mistake was made in this case. I don't think that one can say the pension board made a definite and there's a definite and firm conviction that a mistake was made. And I can, if I could just finish my thought, I could cite a parade of hypotheticals and examples that if the court allows this order to stand, and this essentially becomes the law of the land, I mean, it exponentially expands beyond what the legislature ever intended in terms of what acts a person could be performing, such that they would be entitled to a line of duty disability pension. And I think that's something that's best left to the legislature, and they could do it by simply amending the pension code if that's what they wanted to provide coverage here. Anything further? No. All right. Thank you, Mr. Duda. Thank you very much for your time, Your Honor. Mr. Duda, on behalf of the appellate, you may proceed. Good morning, Your Honors. My name is Thomas Duda. May it please the court, counsel. I represent the plaintiff in this matter. I want to start out on a dry subject. The standard of review is represented as clearly erroneous and that this court has no choice because of this first district opinion that's all controlling. I kind of, in my brief, I had cited, but I brought with me the language of cases from this court on these kinds of issues. This issue of the definition of active duty began with a case in this court, White v. The City of Aurora, which was an Aurora police officer who slipped and fell and suffered a career-ending injury while riding traffic tickets. And it was determined that the act of getting in and out of the police car was not an act of duty. And this is what this court said about what the standard of review for that fact pattern, which is exactly this fact pattern, says here the facts were uncontroverted and the board was charged only with interpreting the meaning of the term active duty as contained in Section 3-114.1 and defined in Section 5-113. Because these are purely issues of statutory interpretation, we will apply a de novo standard of review. And in my brief, I not only cited White, I cited Martin v. The Police Pension Fund of Shiloh, Hoffman v. Orland Firefighters Pension Board. The de novo standard of review, when there are no factual issues, is the applicable standard of review and how is not controlling on this issue. How is, as the court below indicated, highly distinguishable from the facts of this case? When you talk about factual issues, if there are factual issues, that's resolved by a manifest way to the evidence. Correct. So once the facts are resolved and we apply the facts to the law, that would be clearly erroneous, correct? But that's not what has to be done here. I mean, the facts are undisputed. The question is what does the term active duty, in terms of rules and regulations, mean? Does that mean rules and regulations that are written and specific or does it mean any rule or regulation or directive? It's purely a question of statutory interpretation. Well, whether your client's actions were going toward that regulation to fulfill that regulation, would that be an application of the facts which are undisputed? Again, at some point in time, to get to a clearer erroneous, the facts are undisputed. You know, at some point in time, you have a set of facts that have been found by some court or a board, and then you apply those to the law, and then that's the middle standard we're talking about here. I know what the Court's getting at, and I don't mean to be obstreperous. It's just that the fact pattern here and the provision here, this Court applied the de novo standard in white, and I think this is white revisited. Well, obviously, we'll have to make a decision on the standard of review, which is a threshold matter. And I'm not sure this Court's going to make it. I don't think your opinion is going to turn on which standard of review. You know, if we did de novo, she'd win, but we can't do de novo, so she loses. I don't think that's what's going to happen. Let me get to the overarching question. He makes the argument that she was not engaged at that point in an assignment. Her shift had not started. Therefore, there was no on-duty act. Where's the flaw? What's wrong with his argument? The argument is that the duty was imposed upon her to be at her workstation at precisely 7 a.m. in full uniform, ready to go. And in order to accomplish that directive, she had to be at work early. If you're not working. The appellate courts get concerned about rules that are not definitive. They're not bright-lined. And as I was reviewing the record and the briefs and everything, I have to ask you this question. Absolutely. So where do you draw the line? I see your argument that she's under the pressure and the obligation to get there timely and be ready to go at 7. What about if she slips in her driveway going out of the house? Under the same argument, she obviously has to be timely prepared to be there. Where do you draw the line? Would that be an act of duty that would be covered if she fell in her driveway? I would agree with the Court. I would draw the line that it occurs within a reasonable time and place. What's a reasonable time? Yeah, that's the issue. That's our question. What's reasonable? Well, I think what's reasonable is, number one, she's on the fire station premises. And she's there 20 minutes beforehand. And the evidence that shows that it's reasonable are the annual evaluations of her supervisors. Evaluating a duty imposed on her by the collective bargaining agreement and by the practice of the department and by the acknowledgment that if you're not early, you're late. Well, are you tentatively conceding that she at least has to be on the fire department premises? I think she has to be on the premises. I do. I'm reluctant to use the analogy of the workers' compensation cases of Hiram Walker and Christman, which is if you're at your employer's premises a reasonable time before the start of your shift because it steps into a trap that I want to address later in my argument. I happen to sit in the workers' compensation appellate district, and I hear all those cases. That's a little bit of a different animal. It is. And I don't think the circuit court or I have ever argued that the workers' compensation cases are direct authority. I'm saying what the courts have held is that they're to be read in paramateria. This court in Dembski v. Mundele already decided that active duty is not the same thing as a rising out of it. Of course, it's a direct holding of this court. So if I ask you to summarize specifically, where was the on-duty act? Where was the assignment? You've tactfully conceded that if you're walking out of your house, you're following the driveway even though you're under pressure to get there at 7, you're not covered. So if you were to summarize, where is the act of duty that entitles her to get the disability pension? What was she doing that was an act of duty aside from the fact that she had to be there at 7? Can you tell us that? That is the act of duty. The act of duty is getting to the premises at a reasonable time in order to accomplish the established goal of the employer. Is she responsible in tempering what's reasonable because she chose to not dress at home and therefore could arrive at 5 to 7, but she chose to leave her uniform at the firehouse is that she comes presumably earlier to change and be ready there? I don't think whether it's 20 minutes or 5 minutes makes a material difference in the case. And whether she changes at home or... But it might make a material difference in future cases, which is what counsel was saying. We do have to look at what's the impact of this decision. But we're deciding a specific case. And this specific case has evidence as to what the village itself considered reasonable. And those are their performance evaluations that we quoted in our brief where her supervisors. And these aren't just co-workers. These are people charged with the responsibility. Wait a minute. The supervisor determined you are in compliance. You're great. You're here early all the time. Bethany says she exceeds expectations. She is consistently here early for duty and ready to take a call. Early at 6.58? I mean, you're asking me to read that and extrapolate it out that, boy, 20 minutes is compliance with a regulation to be on time for work. As amplified by her evaluation that says, this is a good thing that you're here always early and ready for work. That seems awfully soft with all due respect. I mean, what's the guidance to future courts and future pension boards to say, where do we draw the line? What is reasonable? What is it that you're doing? What if she's there an hour early? Well, that kind of gets me thinking of the part of my brief that talks about this statute is to be liberally construed in favor of conferring benefits. Even if there's no black line, and it's a soft line. I agree with the court, and I can't tell the court Tom's got a bright shot line. I don't. What would your answer to that be? Given her performance, given the encouragement of her supervision in reviewing her duties, what she did was reasonable. That, I think, is the standard in future cases. Wait a minute. Hang on a second. Because of the evaluation, what if you have a firefighter who doesn't get that particular evaluation, same facts, they fall in the parking lot right before summer? Under your theory, are you saying they wouldn't recover because there was no positive evaluation? No, I wouldn't say that because clearly there's an evaluation on punctuality and arrival for work. But that's my question. What does the evaluation have to do with the right to recover? It reflects that it's an act of duty. You're evaluating an act of duty. You're evaluating your employee's performance in complying with acts of duty. That's what all of these performance evaluations are for, and they're used for promotions if you do well, and they're used for progressive discipline if you do it poorly. But wouldn't a firefighter take umbrage if they fell under the same circumstances in the parking lot and they don't get the act of duty pension that somebody with a positive evaluation does? Oh, I don't think it turns on whether it's a positive or negative evaluation. That I agree with the court. The disturbing thing about the demarcation suggested by the pension fund is you are permitted in Bolingbroke to arrive at work early and go on jump calls. In other words, calls come in during as the shifts are changing. One crew is going off, one crew is coming on. The argument presented to the court this morning is that a Bolingbroke firefighter who is injured on a jump call would not be covered because that firefighter is not yet on duty. He or she is reported to work early. It's before 7 a.m. But couldn't they already be on assignment? They may not have been on duty, but they're on assignment. Isn't that the exception? They're not on assignment. The cross-examination of the pension board of my client was, are they optional? Can you refuse to go on a jump call? The answer was yes. So theoretically, under the line of demarcation suggested by the pension fund, they wouldn't be covered at all. And I clearly don't think that's what 6-110 at all means. And I think, by the way, the court clearly applied the statute. The court only spent a page and a half dealing with workers' compensation. I do want to address this issue. By no means do I think this court should consider Hudson as being authority to reverse a line of cases that began in 1988. The first case that held that the two statutes, the pension code and the Workers' Compensation Act, should be read in paramateria and that each court should consider the decisions of the other under each statute as an aid of interpretation began with the Mitsushi v. Chicago case in 1988 and continued up through present. In my brief, I think I cited eight or ten of those cases. The suggestion that the Howe case has reversed that entire trend and holding, I don't agree with at all. I think the court appropriately used these decisions as an aid in interpretation. He didn't use it as a substitute for the express language of the pension code. But, of course, this court isn't really reviewing the decisions of the circuit court. Is the code ambiguous, though? Or does it matter? We generally don't use statutory aids unless it's ambiguous. I agree with you, Your Honor. The fact that he used the statutory aid is by no means a suggestion that the court adopted the workers' compensation standard in deciding this case. That's not what the court did in this case. My final point to the court is, in the argument of the pension fund, the suggestion is made that if there's no regulation compelling and imposing a duty on a firefighter, it's not an active duty. There are many downstate departments that don't have SOGs, standard operating guidelines, or their standard operating guidelines are extremely general. That's not Bolingbroke. Bolingbroke is fairly meticulous. So the suggestion that if it's not in black and white and written regulation, it's not an active duty, would foreclose a number of departments from ever awarding line-of-duty disability benefits. Thank you for your time. Let me ask you a quick question. You discussed in your argument what you called a soft line, and the board really should be looking at what's reasonable. Now, if we're talking about soft lines and what's reasonable, do we circle back, though, to the clearly erroneous standard and give the board deference in what they decided? Because what we're talking about here is not whether there's a rule or regulation, but whether what she was doing was an act imposed by the rule or regulation. Correct? So when we go to circle back, don't we circle back to clearly erroneous and give the board some deference? You get to the point you are in response to the question from Justice Jorgensen. I think that the language of the statute is clear, and any reasonable person would have found that this case was clearly compensable, and it would be a sharp line. But I do agree with the Court's analysis. If you view it as a fuzzy line, then you would apply clearly erroneous. You would give some deference. But if you still believe that a mistake has been made, you're compelled to reverse the decision. All right. Thank you, Mr. Doolittle. Thank you very much. Mr. Smith, you may address the floor. You're good to go. May it please the Court. I'm Neal Smith from the Village of Bolingbroke. I want to touch on a few things that the counsel just addressed, and one is his proposed reasonableness standard and just the problematic nature of that, as I think that the discussion reflects. His proposed reasonableness standard is that it's a reasonable standard is whether the person is on the fire station premises. If five minutes before their shift, they're at home, they walk to their car and they slip on ice, not on duty. But if they go to the fire station five minutes later and step on ice, it's a duty-related disability. And I think that's problematic. For one, it brings in all kinds of arbitrary considerations. For instance, how big is the parking lot of the fire station or whether they even have a parking lot. According to the counsel, if somebody parks in a parking garage that's not a fire station property and they slip there, no duty-related disability. But if it's a parking lot that's right next to the fire station, then it is a duty-related disability. That kind of thing is really... Well, you pointed out that it can be a slippery slope, but let me ask you what I asked your co-counsel. So are there any exceptions? Are you saying the firefighter must actually be on a specific assignment or physically in the building at 7 o'clock? When does the duty begin? It's the shift. It's the 7 a.m. And that's perfectly fair from a policy perspective, especially since you still get a 50% pension. I mean, the pension code has it set up where even if you're injured, you still get a 50% pension even if you're not on duty. So the fact that there's this bright line like that is not a problem at all. So I think it is the 7 a.m. I think it is the 7 a.m. standard. Does the bright line encompass these jump calls? I mean, you're a bright line. I mean, if somebody is just doing it, they hear the siren go off, they jump on the call. They don't have to, but they decide to if they're injured. Sure. When they jump a call, they jump into on duty. They're on assignment at that point, right? They're on assignment at that point. But the counsel said that if you have the right to refuse, it cannot be considered being on duty. Correct. They may not have a... Is duty optional? Do I decide when I'm on duty and when I'm not? Mrs. Floyd decides whether she can jump a call, whether she can take a call early. So if it's 6.40 and she decides to jump a call, then she's jumped into duty. She's on the clock. She gets paid for that. But if it's 6.40 and she declines that, then it's as if she's at 6.40 on a regular day. So 7 a.m. is not the decisive factor. The factor is what you're doing. Correct. But it's... It has to be what you're doing because what if you're late? It's what you're doing, but you can basically start on the clock early, and that's what jumping calls is. It's just... So your exception to the 7 a.m. is for purposes of a jump call and pretty much limited to that. If you start your shift early, you can start your shift early. Well, did she start her shift early by making sure she was there to be fully dressed and ready to go? She did not because of how the active duty definition distinguishes... Specifically? Pardon? Specifically? The active duty definition says any act imposed as opposed to any duty imposed or any time required. An act imposed is what specific act were you required to take. And the active duty definition... I'm sorry. But the jump call, she's not required to do that. So I guess I'm asking you to curve the line and tell me exactly where this line falls. If it's... If she jumps a call, then she... The active duty definition is three-part. Is there any act imposed by an active fireman by the ordinances of the city? Is there an act imposed? So we have to ask, is there an act imposed? There is not in that case, right? Correct. Okay. Is there an act imposed by the rules or regulations of the fire department? Or three, any act... And part three is broader. Any act performed, not any act imposed, but part three of that definition is any act performed by an active fireman while on duty having for the right purpose of saving the life or property. So the difference is that they're on duty once they jump the call. That's what your argument is. And your position is that she decides when she's on call by jumping the call. She decides to take that call at 630. She's on duty. So she has decided, I am on duty at a half an hour early, and the act is presumably getting on a fire truck to go to a fire. That's right. Okay. That's right. Anything further in wrapping up your argument? Pardon? Anything further in wrapping up your argument? Just a few other points I wanted to make. The standard of review, that clearly erroneous standard of review, is a Supreme Court determination in the Belmont case. So that clearly erroneous standard is if you have historical facts not in dispute, then you take those and see if they apply, you know, if they are applying, satisfy this statutory standard. So that's the Supreme Court. It's not a district, second district versus first district or third district thing. That's a Supreme Court rule. And finally, I want to point out about the definition of activity. Using a workers' comp analysis is wrong. Sometimes workers' comp cases and analysis is used in connection with the pension code. But that's when they have similar or identical provisions in the pension code and the workers' comp, which does happen. But in this case, there's no definition of active duty in the pension code. I mean, there's no definition of active duty in the workers' comp act. And so it's just, it's inappropriate to use workers' comp cases in that analysis as the Howe case recognized. It's especially when active duty is ambiguous, clearly written. So it was improper for the trial court to use to go down that road of considering workers' comp cases. And we're not saying that, as counsel suggested, we're not saying that you should never use workers' comp cases in consideration of the pension code. It's just that the workers' comp act and the pension code act have to be, have similar or the same provisions. And that's when you use, that's when it's okay to use workers' comp analysis. But that's not the case here. Thank you, Mr. Smith. Thank you. All right. I'd like to thank both counsel, both sides, for the quality of the arguments in this case here this morning. The matter will, of course, be taken under advisement in a written decision on this matter or issue in due course. We will stand and brief recess to prepare for the next case. Thank you.